## Case No. 7,281.

### JENNINGS v. CARSON.

[1 Pet. Adm. 1;[1] 4 Cranch (8 U. S.) 5, note.]

District Court, D. Pennsylvania. 1792.

Before PETERS, District Judge.

This is a case, in which the general principles are stated in the proceedings and exhibits. There are some circumstances, however, clearly ascertained by those exhibits, which I shall have occasion to mention in the course of the observations I shall make on the merits hereafter. The libel complains of the illegal capture of the sloop George [Robert Smith, master], and her cargo, the property of the libellant, then and now a subject of Holland, during the late war, to wit, in July, 1778, by the schooner privateer Addition, Moses Griffin, commander, belonging to the testator Joseph Carson, and others, who are named in the answer of Joseph Carson, in his life time. It is alleged, on the part of the respondents, that the vessel captured was employed in carrying goods, belonging to the subjects of Great Britain, contrary to the regulations and laws of the then

---

[1] [Reported by Richard Peters, Jr., Esq.]

congress. They rely on the libel and condemnation in the state court of admiralty of New Jersey. The verdict of the jury, ascertaining the facts, and the condemnation by the court, and order of sale and for payment of nett proceeds to the captors. The sale of the vessel and cargo at vendue, and the monies being received by the marshal of the court, in whose hands, it is said, they now remain, in depreciated paper, not having been distributed to and among the captors, and of course the respondents, or their testator, received no part thereof; and therefore they allege that the marshal only is chargeable to the libellant, and not the respondents or the testator. They insist that there was probable cause of seizure, and therefore the captors are not answerable in damages. They also plead an abatement to the jurisdiction of the court, because they assert that the subject of prize or no prize belongs to the admiralty of New Jersey, and not to this court, which has no cognizance of the question, nor has it power to effectuate its judgment against executors. On the part of the executors, particularly, an answer was put in denying their being chargeable for the torts of the testator, which as well as their consequences die with his person. But, on an explanation on the behalf of the libellant, that he claimed no damages for the tort merely as a tort, but sought for restitution of his property only, this point was abandoned by the advocates for the respondents. The libellant, to repel this defence, and denying in the usual form the facts as stated, sets forth the reversal of the judgment of the court of Jersey by the court of appeals of the United States on the 23d of December, 1780, which contains a direction to the latter court to make restitution of the property with costs but not damages. They also join issue on the point of jurisdiction; and distinguish between a suit commenced in the life-time of the testator, and one brought, in the first instance, against the executor. Five points were made by the advocates for the respondents: (1) The tort dying with the person. (2) The jurisdiction of this court is not competent, as it is not a prize court. (3 and 4) If a prize court, yet, as the cause originally attached in the court of Jersey, that was the only court in which the consequences are cognizable; and is alone competent to effectuate the decree of the court of appeals. (5) A capture with probable cause is not a subject of action for damages.

The first point being waved brings the question to the competency of jurisdiction, which, in order as well as necessity, should be the first point considered, because, if the court has no jurisdiction, it is nugatory to enquire into the merits of the cause.

On this point, as it first struck me, I confess I had doubts. The account given by Lord Mansfield of the arrangement of the court of admiralty in England, as in the Case of Lindo and Rodney, 2 Doug. 613,

note (1 Williams, Abr. 463), produced hesitation; and my respect for the opinion of that great character, as well as the arguments of the advocates in the present cause, induced a deliberate consideration of the subject. The division of the court of admiralty, into two sides, prize and instance, until I saw this case, appeared new to me;[3] and it is allowed

[3] Notwithstanding this division of the court of admiralty of England was not generally known, because it had not then appeared so strongly marked, as to claim particular attention to it, it is established from the earliest periods of their judicial history. English common lawyers (and too many here) are only occasionally called to investigations into admiralty subjects. The instance court is the appropriate and real, or ordinary, court of admiralty. The prize court is only brought into activity by wars, and the incidents produced by them. It would have been fortunate for that country, as well as others, if that court had been one of less business, and of course less distinguished by the incessant occasions for the exercise of its power. It is customary to issue a commission to the same person, who is the ordinary judge of the high court of admiralty, on the commencement of hostilities. The instance court takes cognizance of the general subjects of admiralty jurisdiction, and proceeds agreeably to the civil or Roman law, the laws of Oleron, and established "Usages and Customs of the Admiralty," as well as special and local regulations. The prize court has exclusive jurisdiction of captures, or prizes, in war, and local matters connected therewith. Its proceedings are generally according to the laws of nations: though in particular instances it is governed by local orders and occasional interferences of the executive authority, of disputable character, as they respect the laws of nations. The line of distinction between these departments of the court is preserved through all the proceedings. Appeals are distinct, and made to separate tribunals. From the instance, they are prosecuted before delegates, appointed by the king, by commission issuing out of chancery. By 8 Eliz. c. 5, the decision of the delegates is final. Those from the prize court lie to commissioners of appeal (mostly of the king's council) appointed by the crown for this special purpose only. By an arrangement, contrary to the spirit of their own constitutions, the greater proportion of these judges of appeals by their orders in council, make the laws on which they give judicial decisions. In 1748 the judges of the courts of Westminster were added to the commission for the dispatch of business, but by the 22 Geo. II. c. 3, no sentence given under a commission is valid, unless a majority of the commissioners present are actually privy counsellors. 3 Bl. Comm. 70. Their colonial courts are branches of the high court of admiralty, to which appeals lie from the instance side to the courts of admiralty in England, or from that of prize, to the lords commissioners of appeals. By a late arrangement (1801,) the British colonial courts of admiralty are placed on a footing more independent and just, both as it respects the judges and mode of appeal. See the act of the British parliament on this subject printed in the appendix of Rob. Rep. Cas. 299. When I declared this division of the court "appeared new to me," I should have said I did not recollect it. My mind had been abstracted from the subject, by a long occupation in the military and political affairs of our country. Having been register of the colonial court of admiralty before our Revolution, the knowledge of the English arrangement of the court, must have been once familiar to me; and habits of attention have since revived it, though it had been interrupted. It is certain, however, that the minutes or records of admiralty proceedings (in this country) were uniformly kept without regard to this dis-

not to have been generally known, if at all, to the common lawyers in England, before that case was determined. In this country it never was known, nor does it appear that any new commission was ever transmitted to the colonial judge of the admiralty from Great Britain before the Revolution, in cases of wars between that kingdom and its enemies. I have traced, from records and other authentic information, the proceedings of the admiralty court of Pennsylvania, for a period exceeding fifty years: and I have the best reasons for believing, that the practice in other colonies was similar; in all the proceedings, prize-suits are called suits civil and maritime. During the late war, when we assumed and effected our independence, the proceedings were unaltered in this point. I do not find that there is any such distinction in any other nation, except it should be found in Holland; and of this I much doubt. The authority, out of Bynkershoek, produced by one of the advocates for the respondent, founded on an ordinance of the Earl of Leicester, shews that there is a court there, whose authority is entirely confined to captures as prize, and it has no jurisdiction even of other maritime cases. This, therefore, is not applicable to a question concerning the powers of a court of admiralty; which is allowed, even in the Case of Lindo and Rodney to possess jurisdiction in all maritime cases: though in England it is said to act under a peculiar (and therefore, not a generally known) organization; I take it, therefore, for granted, because the contrary has not been shewn, that, in England alone, are these distinct branches of the same court to be found. In all the books of reports, in which cases of prohibitions to the admiralty are mentioned, precedent to the Case of Lindo and Rodney, these prohibitions are moved for and granted generally to the court of admiralty; though, in a case in Term Reports (long after the Case of Lindo and Rodney) the distinction is taken (3 Term R. 323: 1 Williams, Abr. 466), and the prohibition moved for to the prize court. This very instance shews it to be a novelty, in the common law courts there: for if it had been known as an old practice, the particular designation of the prize court, would have been unnecessary; and the prohibition would have been granted to the admiralty, generally, as it ever had been in former cases. Acting as we now do in a national, and not a dependent capacity, I cannot conceive that we are bound to follow the practice in England, more than that of our own, or any other nation.[4] Customs purely colonial were parts of our laws even in the times of our connections with Britain. I need instance only one, to wit, that of the mode of conveyance of femme coverts estates, contrary to the laws of England. [Davey v. Turner] 1 Dall. [1 U. S.] 11; [Lloyd v. Taylor] Id. 17. This is a case at common law, in which we then were, and now are, particularly called to follow their rules and practice in general. The admiralty proceeds by a law which considers all nations as one community, and should not be tied down to the precedent of one nation; though it were more clearly ascertained. I shall therefore conclude that, if the powers of an admiralty and maritime court are delegated by congress to this court, those of a prize court are mixed in the mass of authority with which it is invested; and requires no particular specification. They are called forth, if generally delegated, by the occasion; and not by repeated and new interferences of government. Nor do I believe that, even in England, any new authority is vested; though a kind of legal and solemn notice is given of a war, in which subjects for the prize authority of admiralty may occur. It does not begin with their wars, but was pre-existent: it does not end with the commencement of peace, for their books shew it to be exercised at any time afterwards. Government never interferes to put an end to it; how then can its power be repeatedly necessary to begin it? The fact is, it is inherent in a court of admiralty; and not lost, but torpid, like other authorities of the court, when there are no occasions for its exercise. But here the question arises: "Have congress, by their judiciary laws, vested this court with general or special admiralty powers?" Congress have authority delegated by the people in the constitution in "all cases of admiralty and maritime jurisdiction." The words of that part of the judiciary law affecting this subject, in which the authorities of this court are described, will be seen in the ninth section of that law: It "shall also have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, including seizures under laws of impost, navigation, or trade of the United States." It is said, prize or no prize is a question of a military, not a civil nature. But I find no such distinction in the books. 3 Bl. Comm. p. 69. Blackstone in his divisions of courts, does not class that of the admiralty as a military, but a maritime court: and it will appear, that the jurisdiction of prize is within its powers; though he points out, in cases of prizes in the then colonies, that appeals were to members of the privy council and others, in consequence

---

tinction. Several nations, I now find, have separate courts for prize decisions, other than the ordinary admiralty or maritime tribunals. France has a distinct court. Holland distinct courts, in several provinces. So also has Spain.

[4] This is a general, but not entirely an accurate remark. The practice and laws of the admiralty of England, as they existed before our Revolution, were particularly imperative to us. The arrangement of courts may be different: and

there are exceptions where our usages, well established, differ from those of that country; wherein the "usages and customs of the admiralty," are not exclusively their own, but adopted from those, in many instances, of other nations.

of treaties and domestic arrangements. But he says, "The original court, to which this question is committed in England, is the court of admiralty, without any distinction as to the nature of its powers, whether instance or prize, military or civil. In book 3, p. 108, he mentions the exclusive and undisturbed jurisdiction of the court of admiralty, in cases of prize, and that court determines not according to British laws or practice, but, "according to the laws of nations." Should I confine myself merely to the enquiry, whether this could be classed under the description of a "civil cause," I should think there were grounds to support the idea of its being comprehended. In the Case of Atcheson and Everitt, Cowp. 382, some light is thrown on this view of the subject; because it appears, that a civil suit may, in substance, but not form, partake of criminal ingredients. So, by parity of reason, may a civil case of admiralty and maritime jurisdiction be mixed with or grounded in transactions of a military nature; but I do not think it necessary nicely to fix this point.[5] What is, perhaps, of most consequence, is to ascertain the intention of congress in distributing a power, clearly in them, to their judiciary department; and what was said by one of the advocates for the libellant strikes me as being just and proper, viz. that the construction should be made from a consideration of all the laws on the subject in pari materia. "The court shall also have cognizance, &c." that is, being invested with criminal powers in certain cases, it shall also have civil powers as opposed to criminal in admiralty and maritime cases. By recurring to the 12th, 13th, 19th, 21st, & 30th sections of the judiciary laws, it will appear

that congress meant to convey all the powers, and in the words of the constitution, as they possessed them in admiralty cases; and actions or suits in these cases can originate only in the district courts. For the foregoing reasons, and some others which might be added, I am of opinion that this court possesses all the powers of a court of admiralty, and that the question of prize is cognizable before it. I have gone thus far into the discussion of this point, because I believe it is the first time it has been agitated in a federal court. I do, therefore, decree, adjudge and determine, that the plea to the jurisdiction of the court, as not being competent to determine prize questions, be, and the same is, hereby overruled. As to the question on the legality, equity and propriety of the court's interference in the present suit to effectuate the decree of the court of appeals, and all other questions save that on which I have determined, I give no opinion, but hold them under advisement (unless the parties agree that I shall proceed under the present defect of proof in some points, and under some doubts I entertain concerning them) that an appeal may be lodged in the superior court. wherein I confess I should prefer an ultimate decision in a cause said to be important in itself and extensive in its consequences.[6]

---

[5] The period elapsed since this decision has been abundantly productive of events, which centuries, in past times, would have been occupied in evolving. We have been too intimately acquainted with the British prize courts, to have any doubts now about their arrangement. They are, however, part of the admiralty jurisdiction. Their subjects are "maritime acquisitions, earned and become due on the high seas." and their jurisdiction attaches "ob causam à re maritima ortum." Being the only department of their judiciary not entitled to our admiration, they furnish instances in which judicial decisions are directed, and varied by executive interferences, in the form of arrettes, or orders of the king in council. They do not determine as they ought, in all cases, "according to the laws of nations," as Blackstone asserts; but, in too many points, according to the ebbs and flows of executive policy and opinion. These originate, are multiplied, or diminished, with the chances producing adverse or prosperous events in wars; and, by sudden and unexpected changes and severities, after relaxations of the rigors of their own regulations, neutrals are plunged into unforeseen difficulties, and frequent ruin. To them....who must become belligerent, or submit....the British law maxim is degradingly applicable, however indignantly felt.—"Misera est servitus, ubi jus est vagum, aut incognitum." Their instance court is still properly separated from that of prize. And, being occupied only in private transactions, it preserves its purity; and administers impartial justice.

[6] This case on the point of jurisdiction went up. by consent, to the circuit court. The judgment of the district court being affirmed, it came back, for decision upon its merits. But no decision was ever had, on the merits, by the district court. By consent it returned to the circuit court, which gave a decision in favour of the libellant; from which there is now an appeal depending, in the supreme court of the United States. This decision is now published, to shew that all the powers of a court of admiralty are vested in the district court. Some of the cases which follow have circumstances of a mixed character, requiring the jurisdiction to be complete on both the prize and instance sides of the admiralty court.